**7779**

No. 7779

Court of Appeal - Parish of Orleans.

- - - - - - - -

Parish of Orleans

vs

Bernardo G. Carbajal and Minnie Reilley
and Nicholas G. and Mrs. B. G. Carbajal,
Executors of the Succession of Bernardo
G. Carbajal.

- - - - - - - -

- - - - - - - -

By Dinkelspiel, J.

By Dinkelspiel, J.

This is a suit under the injunction and abatement act, being Act No. 47 of 1918. The petition alleges that the premises No. 333 South Liberty Street, in this City, of which Mamie Reilley is the tenant and occupant, and the other defendants are the owners, was used on the 11th of June, 1919, for the purpose of prostitution and bore the general reputation of being the resort of prostitutes, and a place where prostitution and assignation was carried on, conducted or permitted; hence, acts charged constitute a nuisance within the law and that a writ of injunction and abatement is necessary.

That Mamie Reilley, tenant and occupant of said premises, on information filed August 26, 1919, charged with operating said premises as a disorderly house for the purpose of prostitution and assignation, when arraigned August 29, 1919, pleaded guilty to said charges.

The only answer filed in this case was by the owner; who after virtually declaring the unconstitutionality of the act, which was overruled by the court below and referred to the merits, denies the allegations, and answering further says: "Now further answering, defendant avers that the said premises is at the present time and has been since August 1st occupied by a respectable family."

This suit was instituted by plaintiff on September 10, 1919. The act charged was stated in the petition to have been committed on the 11th of June, 1919, some three months after the acts alleged had occurred, and the question presented in this case for determination is whether or not under these circumstances, and as disclosed by this record, the act can or can not be enforced.

428

A careful study of the question involved leads us to the conclusion that this was a house of assignation and prostitution for some time prior to the month of June; certainly on the day mentioned it was conducted as a house of prostitution and bore the reputation of such a house. But the evidence further shows that some time afterwards notice to vacate was given to the tenant on the 7th of June, 1919, and subsequently within a few days the premises in question were vacated.

The title of the act, amongst other things, and the entire act itself; "to declare houses of assignation and prostitution, and the contents thereof, a nuisance and to provide means to enjoin and abate same; to declare the owner of any building, structure, land or other place, used for such purpose, and the agent of such owner, and the lessee, sub-lessee, or other occupant thereof, guilty of maintaining a nuisance, and to provide means to enjoin them; and further providing for penalties for contempt of court and other clauses effect, imposing fines, payment of costs, etc."

Section 3 provides: "That any violation of the provisions of any injunction issued in a cause instituted under the provisions of this act shall constitute a contempt of court and a party found guilty of said contempt shall be punished by a fine of not less than $50.00 or more than $250.00 or by imprisonment in the parish prison for a period of not less than thirty days nor more than six months, or by both fine and imprisonment."

Section 7 provides: "That on hearing in any action filed under the provisions of this act evidence of the general reputation of the building, structure, land or

other place or of the defendant or of the occupants thereof, or habitual visitors thereto, shall be admissible, and judgment may be based on the general reputation so proved."

Under the provisions of this act and under the authorities, in our opinion, the act must be strictly construed as quasi-criminal.

It has been held by our Supreme Court in the 31 Ann. 105, Paul Trevigne vs. School Board & W. O. Rogers, the syllabus of that case reading: "An injunction will not issue to retrain the doing of a thing which has already been done which is an accomplished fact."

At page 106 in the same matter the Court goes on to say in the body of its opinion: "It would be as vague and unreasonable, to attempt to restrain action of an act which is judicially admitted as having already been executed."

In the 133 La. at page 214, Dunham, et als, vs. Town of Slidell, the syllabus reads: "Under the rule that an injunction will not lie to enjoin the doing of an act already done, an injunction in a suit by taxpayers of a town to restrain the carrying out by the town of an ordinance can issue only to prevent the further carrying out of the ordinance and will not interfer with acts already done under the ordinance."

And in the 105 La. page 179 it was held: "Where a nuisance has been abated before suit, no action will lie."

In the case of People vs. Villeman, 174 Pac. 951 the syllabus reads: "In a proceeding under the 'Red Light' act to enjoin the use of premises for immoral purposes, if it appears that the nuisance had been abated before the action was commenced, proceedings will be dismissed."

And in the body of the same opinion, "Where a nuisance has been abated before the action to abate it was commenced, and it does not exist at the time, the action will be without foundation for its support and utterly barren of substantive results for in such case obviously there will be no nuisance to abate."

And in 29 Cyc. 1257: "The time to commence suit. A suit to restrain or abate a nuisance must be promptly brought, or the right to equitable relief may be lost."

It would in our opinion be an improper exercise of authority if, under the circumstances as disclosed by this record, the house in question would be condemned as a nuisance, when legal notice had been given to the former tenants, who had violated the law to vacate who had vacated the premises, and to enforce this statute against the owners three months after this notice had been given and the house vacated would, under the authorities, be without legal right of enforcement.

Defendants, the owners of the building, offered to prove the good character of the house in question and that of its occupants after the date of the police raid, but prior to the bringing of this suit. One of the defendants in this case, Bernardo C. Carbajal, offered to prove by the tenant that she and her husband rented the premises in question on the 1st of August, 1919, moved in on that date, and are presently occupying the premises and that they are people of good moral character, and that the premises presently bear a good reputation.

Plaintiff objected to that proof and the court maintained the objection.

An objection by the District Attorney, which endeavored to prove the facts above stated, and was not permitted to do so, the object being to show, doubtless, that the

nuisance in question had long since been abated and there was no offense being committed and the house was a reputable one. The court erred in not permitting this and other testimony of a like character being put in evidence. The object of the law being to close for one year houses that had a bad reputation, meant nothing more or less than if otherwise the house had a good reputation long subsequent to the time that it had been shown its reputation was otherwise, was a matter of fact to be determined by the court after the evidence was introduced.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the court a quo be annulled, avoided and reversed, and that this suit be remanded to the Court a quo to permit testimony to be introduced, if any there be, to show the character of the house prior to September 10th, when this suit was instituted, *costs of appeal to be paid by Plaintiff, appellee, costs of lower court to await final determination of the suit.*

Judgment reversed and remanded.